### IN THE

## Supreme Court of the State of Georgia,

## AT MILLEDGEVILLE.

# NOVEMBER TERM, 1859.

Present—JOSEPH H. LUMPKIN,
LINTON STEPHENS, } JUDGES.
RICHARD F. LYON,

## THE TRUSTEES OF THE MONROE FEMALE UNIVERSITY *vs.* BROADFIELD *et al.*

1. When carpenters agree to do work, according to specifications, in a neat and workman-like manner, and fail, not only to comply with the contract, but do the work unskillfully and negligently, they are liable to respond in damages to the employer, for all injuries resulting from the breach of the contract.
2. The fact, that the employer accepts the work, and agrees to pay for it according to contract, does not relieve the carpenters from such liability, unless the employer, at the time, know of the deficiencies, or breach of contract, and expressly agreed to waive his rights under the same, which must affirmatively appear.
3. A new trial must be granted, when the verdict is contrary to law and evidence, notwithstanding there have been two concurrent verdicts of the jury.

Assumpsit, in Putnam Superior Court. Tried before Judge HARDEMAN, at the September Term, 1859.

This was an action of Assumpsit, by the trustees of the Monroe Female University against James M. Broadfield and

VOL. XXX—2.

Tunis Tunison, to recover damages for a breach of the following contract, viz:

"STATE OF GEORGIA, COUNTY OF MONROE. To-wit: Whereas, the Trustees of the Forsyth Female Collegiate Institute have engaged the undersigned to finish and complete the old Botanic brick building, at Forsyth, in said county. The undersigned agree, on their part, to rough-cast the whole of the outside of said building with hydraulic cement, and give to it a complete finish, in such color as said trustees may direct; and, also, to repair the roof of said building with tin gutters, and each side and ends with large tin conductors on each corner of the building. To remove the present dome, and tin over the same, neatly and water-tight, and should any of the shingling need repairing, to repair the same, so as to make the whole of said roof a good one. To remove certain walls, and put in such pillars as might be necessary to support the ceiling, and to repair and put in such girders as, on examination, may be found necessary, and to make a nice and complete finish of the assembly room, in the best modern manner.

" The other rooms of the upper story to be finished, out and out, in a neat and workman-like manner; all the jams of the windows to be plastered, except the assembly room, where the windows are to be plastered: no wood work to be done on the basement, except outside doors and windows, sash and glass in the windows. Every part of said building requiring paint to be painted; the floors in the second story now there laid, in said building, to remain, with such smoothing and nailing as may be necessary. The window sash to be hung with cords and pulleys and weights. The whole of the work necessary to complete and finish the second and third stories, including floors, doors and window-sash, glass, and every other thing, with a rostrum in the assembly room, and fifty feet of black board, to be done by the undersigned in a neat and workman-like style. The undersigned to furnish all materials, and to board themselves and workmen. Window blinds not included. And the undersigned further agree to finish said work by the first day of January next. This August 19th, 1852.

(Signed)          J. M. BROADFIELD,
                         T. TUNISON.

And the trustees agree on their part to pay the said J.

The Trustees of the Monroe Female University *vs.* Broadfield *et al.*

M. Broadfield and Tunis Tunison, on the performance of their agreement aforesaid, the sum of .............. dollars. August 19th, 1852.

(Signed)                 OLIVER C. PHELPS,
*President of the Board of Trustees of Forsyth Female Collegiate Institute.*

The declaration set out the breaches complained of.

The defendants pleaded the general issue, and further pleaded specially, that plaintiffs were present during the progress of said work; and after the completion thereof, accepted and received the same, and have been in the use of the building for two years or more, before the commencement of this suit, etc.

At the trial, plaintiff read in evidence the depositions of D. F. Walker and Richard Bennet, the substance of which was, that the plastering and frame work, overhead in the chapel of the building belonging to the Monroe Female University, fell, in the month of July, 1854. The principal part fell, so that all had to be taken down. There was one chestnut girder supporting the ceiling, wholly unfit for the purpose, being extremely brash and full of knots, and incapable of supporting the weight. There ought to have been two more columns for the support of the girders which have fallen. The damage done by the falling of the girder, they think, amounted to five hundred dollars. The ceiling looked very well if it had had strength, that is, columns sufficient to support it, it would not have fallen. The deponents are carpenters. It cost $530 00 to repair the damage—it was repaired at moderate charges. The work was not done in a workman-like manner. The roof was in bad condition when defendants quit work on it—it leaked so as to injure the whole house. The roof leaked, which increased the weight so that the weak timbers could not support it, and this was the cause of its fall. Mr. Bennet examined it three days before it fell. The work was done in 1853; it fell in July, 1854.

By a second commission sued out, plaintiffs proved by D. F. Walker, the aforesaid witness, that the room which he called the chapel, was the one used on commencement occasions, for concerts, etc.; that he called it the chapel, but it might appropriately be called the assembly room, and it is the only room in the building that could be termed the assembly room.

Plaintiffs here closed, and defendants proved by a witness, James O. Clark—that he assisted in the work done on the building in 1852 and 1853. He was employed as a plasterer. That portion of the work witness had in hand was done in a workman-like manner. It was satisfactory when finished, according to the best of his knowledge; heard no objection to any portion of the work after its completion, and was received by plaintiffs. They also agreed to settle for it according to the contract. The building was used and occupied for a school after the work was completed; plaintiffs examined the building after it was completed, and heard them say they would receive it when a certain spot on the wall was repainted.

Upon this testimony, the case was submitted to the jury, who found for the defendants; whereupon plaintiffs moved for a new trial, on the ground that the verdict was contrary to law and evidence, which motion the Court refused, and plaintiffs excepted.

J. WINGFIELD, for plaintiffs in error.

ADAMS and DAVIS, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

The defendants entered into a written contract with plaintiff to finish and complete the old Botanic brick building at Forsyth, furnish all materials, etc., according to specifications particularly set out in said contract, for which the plaintiffs agreed, as is stated in the pleadings, to pay them $3,527 00. The defendants entered upon the work, and afterwards delivered the building to the plaintiffs, which they accepted as finished according to the contract, and agreed to pay defendant for the same, and did pay, as is also stated, the amount agreed on by the contract, except something less than $200 00. The work was finished in May, 1853, and in July, 1854, one of the girders, and framing supporting the ceiling and floor above the Assembly room, or Chapel of the building, gave way and fell. The girder that gave way, and which evidently caused this mischief, was of chestnut, brash, knotty, and wholly incapable of supporting the weight made to rest upon it. To repair this damage, occasioned by the giving

The Trustees of the Monroe Female University *vs*. Broadfield *et al.*

way of the girder, and of frame work, and falling of plaster, and to repair and refit the chapel, or assembly room, was worth $500 00. It actually cost the plaintiffs $535 00 to have the work done over at moderate charges. The roof, at the same time, was in bad order, it leaked so as to damage the whole building, and to repair the roof and put it in good condition was worth $500 00. This action was brought, by the plaintiff, against the defendants to recover these damages, amounting in the whole to $1,000 00.

1. The written contract of the defendants, in these respects was, that they would " repair the roof with tin gutters at each side and end, with large tin conductors on each corner of the building, to remove the present dome and tin over the same, neatly and water-tight, and should any of the shingling need repairing, to repair the same, so as to make the whole of said roof a good one; to remove certain walls and put in such pillars as might be necessary to support the ceiling ; to repair and put in such girders as, on examination, may be found to be necessary, and to make a nice and complete finish of the assembly rooms "—the whole " to be done in a neat and workmanlike manner."

This is what defendants undertook, and agreed specially to do. Instead of performing their said contract, they either wholly failed to do so, or done the same in such grossly unskillful and negligent manner, as to cause these damages to the plaintiffs. The breach of the contract on the part of the defendants, as well as the damages sustained by the plaintiffs in consequence, are clearly and incontestibly established by the evidence. Upon these facts the plaintiffs were entitled to a verdict against the defendants for the amount of damages proven, the same being $1,000 00 ; for no rule of law is better settled than, that for every breach of a contract, the wrongdoer must respond to the injured party, in damages to the extent and in satisfaction of the injury received.

2. That the plaintiffs received the work and paid for it, or agreed to do so, does not affect their right to recover in the slightest degree ; it is not even a circumstance to be considered against that right. They are entitled to recover, unless they, at the time of the acceptance, knowing of the defective and neglected work, of the non-compliance by defendants with their contract in all respects, expressly waived a performance of the contract, and agreed to pay the stipu-

The Trustees of the Monroe Female University *vs.* Broadfield *et al.*

lated prices, notwithstanding. All of which must be made, affirmatively, to appear by defendants, to be available to them as a defense. The evidence in this case falls very far short of this. Was the attention of plaintiffs called to the fact, that an important girder was brash, knotty, and entirely incapable of supporting the weight resting on it; that the lives of the pupils assembled in the room below would be constantly exposed to the risk of the accident that subsequently did happen? Their attention was not called to it, and they could not see and examine the girder for themselves, for it was concealed from their view by the floor on one side and the overhead ceiling on the other. Did they see and know that the ceiling of the assembly room, or chapel, was not sufficiently supported by pillars? It is said that this was such an open, palpable defect, that the plaintiffs must have seen it. True, they could see the number of pillars, but they were not informed as to the number necessary. The defendants undertook, specially in their contract, to put in such pillars as might be necessary to support the ceiling ; *they* were to judge, and to judge correctly, at their peril. The plaintiffs were not presumed to know how many were necessary, else they would have stipulated for the exact number in the contract ; being ignorant they left that to the discretion and judgment of the defendants.

Again, did the plaintiffs go on the roof, examine it, and see and know that it leaked so as to damage the whole house? And that, with a full knowledge of all these defects and omissions on the parts of defendants, they still accepted the house and agreed to pay the same price for it, as if it had been done in a neat and workmanlike manner ? It is absurd to think so. So far from it, when they accepted the house, they discovered a spot in the wall a little darker than the balance, and they required even this small defect to be remedied before receiving the work. If they were so particular as to a small matter, how much more so would they have been had their attention been called to the great and serious deficiencies in this work. The idea, that they were waiving any of their rights under the contract, never entered their minds ; they stood upon the contract, felt bound by it, and accepted the work because they believed that defendants had complied.

We are well aware of the rule, that when work is done under a special contract, and the employer accepts the work in

The Trustees of the Monroe Female University *vs.* Broadfield *et al.*

an incomplete and unfinished state, that then he cannot enforce the contract as to price, etc., but that he must pay for the work actually done, according to its worth, or *pro rata.* This is not that case, but a very different one, and governed by different principles, as we have already shown.

3. The fact that two concurrent verdicts of the juries have been given for the defendant, makes no kind of difference in this case. The rights of the plaintiffs are too clear and manifest, and the verdict too strongly against the law and the evidence, to let this Court attach the slightest importance to the mere concurrence of juries in the same finding. Those juries might have been influenced by something that is not before us, and we presume were; for how a jury could do otherwise, than find for the plaintiffs, upon this evidence, if they were properly instructed as to the law, we cannot comprehend. Let that be as it may, this verdict is against the evidence and law, and a new trial must be granted.

Judgment reversed.